IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

NANCY HERNANDEZ-RIOS,

    Plaintiff,

v.                                                                                          Case No. 09-CV-615 JC/GBW

MANAGEMENT & TRAINING CORPORATION,
and CARLOS "CHARLIE" McARLEN,

    Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendant Management & Training Corporation's Motion for Summary Judgment as to Plaintiff's Civil Rights Claim (Count IV) and Supporting Memorandum, filed September 7, 2010 ("Motion") (Doc. 68).  Having reviewed the parties' submissions and the relevant law, the Court will GRANT the Motion.

### I.     BACKGROUND

Plaintiff, a citizen of Mexico, filed this lawsuit in New Mexico's Third Judicial District Court on May 11, 2009.  *See Notice of Removal*, filed June 23, 2009, (Doc. 1) at Ex. 1.  She alleged she was sexually assaulted by a guard, "Charlie," while she was an inmate at the Otero County Prison Facility ("OCPF")operated by Defendant Management & Training Corporation ("MTC").  *Id.*  The Complaint asserted claims of assault and battery, negligence, and intentional infliction of emotional distress.  *Id.*

On June 23, 2009, MTC removed the case to federal court on the basis of diversity.  *Id.*  In its Answer to the original Complaint, MTC asserted that it "does not employ, and never has

employed an individual named Carlos "Charlie" McArlen, Carlos McArlen or Charlie McArlen in any capacity." *Answer*, filed June 26, 2009 (Doc. 4) at ¶ 2. MTC also denied Plaintiff's allegations of negligence and IIED. *See generally id.*

On January 6, 2010, Plaintiff filed her First Amended Complaint, alleging four counts: (I) trespass, assault, and battery against MTC's employee; (II) negligence, including negligent hiring, training, and supervision; (III) intentional or negligent infliction of emotional distress; and (IV) "a civil rights cause of action under 42 U.S.C §1983, and violation of the Fifth, Eighth and Fourteenth Amendments." *See generally First Am. Complt.* (Doc. 21).

On August 16, 2010, Plaintiff sought dismissal of Defendant Carlos "Charlie" McArlen. *Motion for Dismissal of Claims*, filed August 16, 2010 (Doc. 61). The Court granted Plaintiff's Motion as to Defendant McArlen and dismissed him from this case on August 26, 2010. *Order*, filed August 26, 2010 (Doc. 62).

The instant motion seeks dismissal of Count IV. *Motion* at 1. MTC points to a lack of evidence that any of its policies or customs caused the alleged violation of Plaintiff's civil rights, that the alleged violation occurred pursuant to the decision of an MTC policymaker, or that MTC was deliberately indifferent to a risk of sexual assault on inmates. *Id.* at 3-4.

In response to MTC's Motion, Plaintiff initially filed a *Rule 56(f) Motion in Opposition to Defendant MTC's Motions for Summary Judgment* (Doc. 74), wherein she argued that depositions of MTC representatives pursuant to Federal Rule of Civil Procedure 30(b)(6) were necessary in order to "present facts essential to justify its opposition" to summary judgment. *See* Fed.R.Civ.P. 56(f). In particular, Plaintiff sought information as to other detainees who were sexually assaulted while in MTC's custody. *Rule 56(f) Motion* (Doc. 74) at 3. This information, Plaintiff argued, would "demonstrate that Defendants failed to establish policies, practices,

2

procedures and rules regarding monitoring the whereabouts of and conduct of prison guards in control of detainees to prevent future incidents similar to what Plaintiff encountered." *Id.* at 3. MTC opposed any continuance of the Court's decision on its summary judgment motions, arguing that "Plaintiff's Rule 56(f) affidavit is improperly speculative." *Def.'s Resp. In Opp. To Pl.'s Rule 56(f) Motion*, filed September 30, 2010 (Doc. 82).

On December 15, 2010, Plaintiff filed a *Motion for Leave to Supplement Her Rule 56(f) Motion* (Doc. 99), detailing scheduling difficulties with respect to the Rule 30(b)(6) depositions of MTC and requesting until January 21, 2011 to file her summary judgment response. Defendant MTC opposed the *Motion for Leave to Supplement*. *Def.'s Resp. To Pl.'s Motion for Leave to Supplement Her Rule 56(f) Motion*, filed December 17, 2010 (Doc. 102). On January 21, 2011, Plaintiff filed a *Second Motion for Leave to Supplement*, requesting an additional four days to respond to MTC's summary judgment motions. *Pl.'s Second Motion for Leave to Supplement Her Rule 56(f) Motion in Opp. to Def.'s Motions for Summ. Jdgmt.*, filed January 21, 2011 (Doc. 107).

On January 25, 2011, Plaintiff filed her summary judgment Response. *Pl.'s Resp. In Opp. To Def.'s Motions for Summ. Jdgmt.* (Doc. 109). In her Response, Plaintiff claims she was sexually assaulted not by Carlos "Charlie" McArlen but instead by Christopher Diaz, who was allegedly an MTC correctional officer at the time of the assault, on September 28 or 29, 2008. *Resp.* at 6. Plaintiff notes that she identified Mr. Diaz on June 30, 2010, when she sat in on his deposition in this matter. *Id.* at 7. Although she acknowledges that her claims of vicarious liability cannot survive summary judgment, *id.* at 17, she argues that her § 1983 claims against MTC should continue, *id.* at 22. Plaintiff points to testimony from the OCPF Warden and Deputy Warden indicating that the alleged sexual assault could not have occurred but for

"*multiple* violations of MTC's stated policies—from *multiple* officers." *Id.* at 23.  She argues the multiple policy violations are evidence in and of themselves of deliberate indifference by MTC to the rights of inmates.  *Id.*

## II. LEGAL STANDARD

### A. The Law Regarding Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).  A "genuine" issue of fact exists where the evidence is such that a reasonable jury could resolve the issue either way.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

In response to a motion for summary judgment, a party must support its assertions of genuine factual dispute by citing to the record or showing that the materials cited by the movant do not establish a genuine dispute.  Fed.R.Civ.P. 56(c).  The party opposing summary judgment must present specific, admissible facts from which a rational trier of fact could find in his favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  However, the Court must consider the record, and all reasonable inferences therefrom, in the light most favorable to the party opposing the motion.  *Adler* at 670 (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505, 91 L.Ed.2d 265).

"[I]f the matter in issue concerns an essential element of the nonmovant's claim, the moving party may satisfy the summary judgment standard 'by identifying a lack of evidence for the nonmovant on [that] element.'" *Medlock v. United Parcel Service, Inc.*, 608 F.3d 1185, 1189 (10th Cir. 2010) (internal quotation and citation omitted) (alteration in original).

### B.     Applicable Law Regarding 42 U.S.C. § 1983 Claims

"To state a claim under § 1983, Plaintiff[] must allege that [she was] deprived of a right 'secured by the Constitution and laws' of the United States and that this deprivation was committed under color of state law." *Yanaki v. Iomed, Inc.*, 415 F.3d 1204, 1207 (10th Cir. 2005) (quoting *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 2753, 73 L.Ed.2d 482 (1982)).

The allegations and evidence required to sustain a § 1983 claim against an employer are somewhat unclear in the wake of *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). *Dodds v. Richardson*, 614 F.3d 1185, 1194 (10th Cir. 2010) (noting "important questions about the continuing vitality of supervisory liability under § 1983 after the Supreme Court's recent decision in *Ashcroft*"). Since *Ashcroft*, the Tenth Circuit has held that

> when a plaintiff sues an official under Bivens or § 1983 for conduct "arising from his or her superintendent responsibilities," the plaintiff must plausibly plead and eventually prove not only that the official's subordinates violated the Constitution, but that the official by virtue of his own conduct and state of mind did so as well.

*Dodds*, 614 F.3d at 1198 (quoting *Iqbal*, 129 S.Ct. at 1949). Although the Tenth Circuit has yet to sort out "what allegations of personal involvement and mental state" meet this standard, *id.* at 1199, it has determined that

> § 1983 allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement (by the defendant-supervisor or her subordinates) of which "subjects, or causes to be subjected" that plaintiff "to the deprivation of any rights … secured by the Constitution …"

*Id.* at 1199 (quoting 42 U.S.C. § 1983). There are accordingly three elements that Plaintiff must

5

prove to survive summary judgment: (1) that MTC "promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Id.*

Before *Iqbal*, the Supreme Court held that an "'inadequate training' claim could be the basis for § 1983 liability in 'limited circumstances.'" *Bd. Of County Comm'rs v. Brown*, 520 U.S. 397, 406, 117 S.Ct. 1382, 1390, 137 L.Ed.2d 626 (1997) (quoting *Canton v. Harris*, 489 U.S. 378, 387, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989)).  There must be some history of tortious activity before § 1983 liability could be imposed on this basis. *Id.*  For example, "continued adherence to an approach that [supervisors] know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability." *Id.* at 407, 117 S.Ct. at 1390.  Similarly, "the existence of a pattern of tortious conduct by inadequately trained employees may tend to show that the lack of proper training, rather than a one-time negligent administration of the program or factors peculiar to the officer involved in a particular incident, is the 'moving force' behind the plaintiff's injury." *Id.* at 407-08, 117 S.Ct. at 1390.

The Tenth Circuit continues to interpret the requirement of deliberate indifference thusly:

> The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm. In most instances, notice can be established by proving the existence of a pattern of tortious conduct. In a narrow range of circumstances, however, deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a highly predictable or plainly obvious

> consequence of a municipality's action or inaction, such as when a
> municipality fails to train an employee in specific skills needed to
> handle recurring situations, thus presenting an obvious potential
> for constitutional violations.

*Bryson v. City of Okla. City*, 627 F.3d 784, 789 (10th Cir. 2010) (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998)).

### C.     Applicable Law Regarding Claims Under the New Mexico Constitution

In addition to her claims that MTC violated the United States Constitution, made pursuant to 42 U.S.C. § 1983, Plaintiff contends that "[MTC's] actions towards its detainees constitute[s] cruel and unusual punishment and denial of due process under Article II § 13 and 18 of the New Mexico Constitution." *Pl.'s Am. Complt.* (Doc. 21) at ¶ 8. These provisions are New Mexico's counterparts to the Eighth and Fourteenth Amendments to the United States Constitution. *Cordova v. LeMaster*, 2004-NMSC-026, ¶ 8, 136 N.M. 217, 220, 96 P.3d 778, 781. However, New Mexico courts will not entertain a plaintiff's arguments under the state constitution where the plaintiff fails to articulate reasons for interpreting the state provisions more broadly than their federal counterparts. *Id. See also ACLU v. City of Albuquerque*, 2006-NMCA-078, ¶ 18, 139 N.M. 761, 770, 137 P.3d 1215, 1224 ("The burden is on the party seeking relief under the state constitution to provide reasons for interpreting the state provisions differently from the federal provisions were there is no established precedent.").

### III.    DISCUSSION

MTC seeks summary judgment on the grounds that Plaintiff lacks evidence to show it may be held liable for Plaintiffs' alleged damages under 42 U.S.C. § 1983. Although Plaintiff requested additional time to respond to MTC's Motion, there appears to be no discovery that is outstanding, and Plaintiffs have filed a complete Response to the Motion. *See Alpine Bank v.*

*Hubbell*, 555 F.3d 1097, 1114 (10th Cir. 2009) (finding no prejudice from the Court's failure to rule on Rule 56(f) motions where all outstanding discovery was completed prior to the Court's summary judgment decision).  Plaintiff argues there are additional facts not mentioned in MTC's Motion from which a reasonable jury could find that MTC violated her constitutional rights.  *Resp.* at 21.  However, Plaintiff has not presented facts from which a reasonable jury could find "deliberate indifference" or that MTC so inadequately trained its employees that "the lack of proper training, rather than a one-time negligent administration of the program or factors peculiar to the officer involved in a particular incident, is the 'moving force' behind the plaintiff's injury."  *See Bd. of County Comm'rs* at 520 U.S. at 407-08, 117 S.Ct. at 1390.

The undisputed material facts in this case are as follows.  MTC hired Christopher Diaz, identified by Plaintiff as her assailant, as a kitchen worker in June 2007.  As an MTC employee, Mr. Diaz underwent an initial 80 hours of classroom training, followed by 40 hours of additional training for each subsequent year of his employment.  Among the training courses Mr. Diaz has attended are sessions on the Prison Rape Elimination Act and Legal Issues/Rights & Responsibilities (including a discussion of "why it is so important to follow policies").  MTC transferred Mr. Diaz from kitchen worker to correctional officer in June 2008.  Within his first two months as a correctional officer, Mr. Diaz was written up for opening a door to a detainee.

In the five years prior to the September 28 or 29, 2008 incident alleged in this case, there was only one other allegation of sexual assault upon an inmate.  In that instance, both the OCPF and the Otero County Sheriff's office investigated and determined that the allegation was wholly unfounded.  From 2004-2010, the American Correctional Association audited MTC twice, awarding scores of 100% in mandatory and non-mandatory standards.

Based on these undisputed material facts, summary judgment is appropriate.  This case is

not distinguishable from *Barney v. Pulsipher*, which also involved allegations of sexual assault by a jailer, where the Tenth Circuit found no evidence of "deliberate indifference." In the first place, there was no evidence in *Barney* of prior instances of sexual assault or even complaints that would have put the employers on notice that their training program was deficient. 143 F.3d at 1308. The same is true in the present case, where there had been only a single previous allegation of sexual assault and that allegation was determined after investigation to be unfounded. Second, even absent a pattern of prior violations, the Tenth Circuit found no evidence of "constitutionally deficient training." *Id.* Not only did the plaintiffs in *Barney* fail to "come forward with evidence pertaining to the adequacy of the instruction [the jailer] received" as part of his training, but even if the training was "less than adequate," the Tenth Circuit was "not persuaded that a plainly obvious consequence of a deficient training program would be the sexual assault of inmates." *Id.* (noting further that "[s]pecific or extensive training hardly seems necessary for a jailer to know that sexually assaulting inmates is inappropriate behavior"). In the present case, Plaintiff similarly failed to present evidence to suggest that MTC's training or supervision was deficient. And this Court, like the Tenth Circuit in *Barney*, cannot conclude that specific training is necessary in order to show correctional officers that sexually assaulting inmates is wrong.

For the same reasons, and also because Plaintiff has not met her burden of providing reasons for interpreting the New Mexico constitutional provisions differently from the federal provisions, summary judgment is granted as to Plaintiff's claims under the New Mexico Constitution. *See, e.g., ACLU v. City of Albuquerque*, 2006-NMCA-078, ¶ 18, 139 N.M. 761, 770, 137 P.3d 1215, 1224.

IV.   CONCLUSION

WHEREFORE, IT IS ORDERED that Defendant Management & Training Corporation's Motion for Summary Judgment as to Plaintiff's Civil Rights Claim (Count IV) and Supporting Memorandum, filed September 7, 2010 is GRANTED. Count IV of Plaintiff's *First Amended Complaint* (Doc. 21) is therefore dismissed with prejudice.

*Plaintiff's Motion for Leave to Supplement Her Rule 56(f) Motion in Opposition to Defendant's Motions for Summary Judgment*, filed December 15, 2010 (Doc. 99) and *Plaintiff's Second Motion for Leave to Supplement Her Rule 56(f) Motion in Opposition to Defendant's Motions for Summary Judgment*, filed January 21, 2011 (Doc. 107) are DENIED as moot.

/s/ John Edwards Conway
SENIOR UNITED STATES DISTRICT JUDGE

Counsel for Plaintiff :

Connie Quintero, Esq.
James F. Scherr, Esq.
Jeffrey B. Pownell, Esq.
El Paso, TX

Counsel for Defendants:

Christina Muscarella Gooch, Esq.
Kurt Wihl, Esq.
Albuquerque, NM