IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

NANCY HERNANDEZ-RIOS,

    Plaintiff,

v.                                      Case No. 09-CV-615 JC/GBW

MANAGEMENT & TRAINING CORPORATION,
and CARLOS "CHARLIE" McARLEN,

    Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendant Management & Training Corporation's Motion and Supporting Memorandum for Summary Judgment as to Plaintiff's Common Law and Punitive Damages Claims, filed September 7, 2010 (Doc. 67) ("Motion"). Having reviewed the parties' submissions and the relevant law, the Court will GRANT the Motion.

**I.    BACKGROUND**

This case arises from an alleged sexual assault on September 28 or 29, 2008, perpetrated, according to Plaintiff, by a correctional officer at the Otero County Prison Facility ("OCPF") while Plaintiff, a citizen of Mexico, was in the custody of the United States Immigration and Customs Enforcement Department. *See generally First Am. Complt.* (Doc. 21). Plaintiff asserts the following counts against Defendant Management & Training Corporation ("MTC"), the corporation responsible for operating the OCPF: (I) trespass, assault, and battery; (II) negligence,

including negligent supervision, hiring, and training; (III) intentional or negligent infliction of emotional distress; and (IV) violations of her civil rights under the United States and New Mexico constitutions.  *Id.*  For these alleged wrongs, Plaintiff seeks compensatory and punitive damages.  *Id.*  Defendant MTC's Motion seeks summary judgment in its favor on Counts I, II, and III, as well as dismissal of punitive damages claims.  Filed concurrently with the instant Motion, Defendant MTC filed a separate Motion for Summary for Summary Judgment as to Plaintiff's Civil Rights Claim (Count IV) and Supporting Memorandum (Doc. 68).

## II.     LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  A "genuine" issue of fact exists where the evidence is such that a reasonable jury could resolve the issue either way.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

In response to a motion for summary judgment, a party must support its assertions of genuine factual dispute by citing to the record or showing that the materials cited by the movant do not establish a genuine dispute.  Fed.R.Civ.P. 56(c).  The party opposing summary judgment must present specific, admissible facts from which a rational trier of fact could find in his favor.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  However, the Court must consider the record, and all reasonable inferences therefrom, in the light most favorable to the party opposing the motion.  *Adler* at 670 (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505, 91 L.Ed.2d 265).

"[I]f the matter in issue concerns an essential element of the nonmovant's claim, the

moving party may satisfy the summary judgment standard 'by identifying a lack of evidence for the nonmovant on [that] element.'" *Medlock v. United Parcel Service, Inc.*, 608 F.3d 1185, 1189 (10th Cir. 2010) (internal quotation and citation omitted) (alteration in original).

## III.     DISCUSSION

### A.     Defendant MTC May Not Be Held Vicariously Liable for the Alleged Sexual Assault.

"[A]n employer is not generally liable for an employee's intentional torts because an employee who intentionally injures another individual is generally considered to be acting outside the scope of his or her employment." *Ocana v. Am. Furniture Co.*, 2004-NMSC-018, ¶ 29, 135 N.M. 539, 91 P.3d 58. Such actions generally arise not in furtherance of the employer's interest but instead "from some external, independent, and personal motive." *Los Ranchitos v. Tierra Grande, Inc.*, 116 N.M. 222, 226, 861 P.2d 263, 267 (Ct. App. 1993). Sexual harassment, for instance, is generally considered to be outside an employee's scope of employment. *Ocana* at ¶ 29 (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 724, 757, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)).

An employer may nonetheless be held vicariously liable for intentional torts "if the employee 'was aided in accomplishing the tort by the existence of the agency relation.'" *Ocana*, 2004-NMCA-018, ¶ 30 (quoting Restatement (Second) of Agency § 219(2)(d) (1958)). This "aided-by-agency" theory was recognized by the United States Supreme Court in the sexual harassment context, where the Court noted that "in implementing Title VII it makes sense to hold an employer vicariously liable for some tortious conduct of a supervisor made possible by abuse of his supervisory authority." *Faragher v. City of Boca Raton*, 524 U.S. 775, 802, 118 S.Ct. 2275, 2290 (1998). This theory of liability is appropriate where the issue is an employer's

vicarious liability for supervisors as distinguished from regular employees. The Supreme Court noted in *Faragher* that

> Recognition of employer liability when discriminatory misuse of supervisory authority alters the terms and conditions of a victim's employment is underscored by the fact that the employer has a greater opportunity to guard against misconduct by supervisors than by common workers; employers have greater opportunity and incentive to screen them, train them, and monitor their performance.

*Id.* To survive summary judgment on the aided-in-agency theory, if applicable, the plaintiff must present evidence showing that the employee/assailant "was able to commit his alleged acts by virtue of his supervisor status." *Id.* at ¶ 32 (affirming summary judgment where no such evidence was offered).

Like the plaintiff in *Ocana*, Plaintiff in the present case has not put forth evidence to show that MTC's employee, Christopher Diaz, was aided in accomplishing the alleged sexual assault by his supervisory position. Indeed, there are no allegations and there is no evidence to indicate that Diaz held a supervisory position with MTC. As such, the Court finds the aided in agency theory does not apply.

  **B.**  **Summary Judgment in Favor of MTC is Appropriate on Plaintiff's Claims of Negligent Hiring, Supervision and/or Retention.**

"An individual or entity may be held liable in tort for negligent hiring, negligent supervision, or negligent retention of an employee even though it is not responsible for the wrongful acts of the employee under the doctrine of respondeat superior." *Los Ranchitos v. Tierra Grande, Inc.*, 116 N.M. 222, 228, 861 P.2d 263, 269 (Ct. App. 1993). For a claim of negligent hiring or retention to survive summary judgment, "there must be evidence that the employee was unfit, considering the nature of the employment and the risk he posed to those

with whom he would foreseeably associate." *Valdez v. Warner*, 106 N.M. 305, 307, 742 P.2d 517, 519 (Ct. App. 1987) (citing Restatement (Second) of Agency § 213 cmt. D. (1958)). For instance, an employer may be held liable for negligent hiring where: (1) the employer knows or should know that the employee has a history of violent behavior and (2) the job in question would require the employee to "be in constant contact with members of the public, most of whom would have been drinking and many of whom might tend to be argumentative." *Id.* at 308, 742 P.2d at 520. *See also Medina v. Graham's Cowboys, Inc.*, 113 N.M. 471, 473, 827 P.2d 859, 861 (Ct. App. 1992) (affirming district court's verdict holding employer, a corporate owner of a drinking establishment, liable for negligent hiring of a bouncer with a known propensity to engage in fights).

Plaintiff in the present case has failed to present evidence that MTC knew or should have known that Christopher Diaz was in any way unfit for the position of correctional officer. Lacking such evidence, the Court cannot conclude that MTC was negligent in hiring, supervising, or retaining Diaz for this position.

> 1. **The undisputed material facts fail to support Plaintiff's request for jury instructions as to spoliation of evidence or negative inference in the event of lost, destroyed or altered evidence.**

Plaintiff argues that a jury in this case may conclude that MTC either lost or deliberately concealed evidence that might support her claims; however, even viewing the evidence in the light most favorable to Plaintiff, the Court finds the undisputed facts demonstrate no basis for a jury to so conclude. Although it is undisputed that MTC destroyed VCR tapes that may have shown Plaintiff being transferred on September 28 or 29, 2008, there is a reasonable explanation for this. *See* UJI 13-1651 NMRA 2011 (permitting an inference that the tapes would contain evidence unfavorable to MTC if the tapes were lost, detroyed or altered "without a reasonable

explanation"). Specifically, "MTC's standard practice [was] to record in a continual 12-hour loop and only pull a tape if [it] had reason to." *Reply* at 10. In this case, Plaintiff did not report her alleged sexual assault for months after it allegedly occurred. *Id.* Thus, even under MTC's present policy, pursuant to which "it keeps visual evidence for three or four weeks or longer," *id.*, the video evidence in this case would have been destroyed before MTC could have known to preserve it.

There is also no documentary evidence of Plaintiff's transfer. However, Mr. Diaz' testimony is that MTC's log books simply did not identify particular detainees by name. *Resp.* at 11, ¶ 37 (noting Diaz' testimony that "that's how we were trained to do it"). Thus, "Diaz admitted that from the MTC log books, there was no ability to identify who the particular detainee was that was moved from point A to point B." Id. at ¶ 38. Although MTC Corrections Officer Luz Duarte testified that the detainee's name was among the information that should have been kept on the MTC log books, Ms. Duarte examined the log books and "admitted there were no names of detainees at all identified on the log books." *Id.* at 12, ¶¶ 41-42. Likewise, Deputy Warden Susan Payne testified that "at the time of the incident, MTC had no way to document where a particular inmate was at any given time or where a correctional officer was at any given time in the facility." Id. at 15, ¶ 66. At no point did Deputy Warden Payne, Ms. Duarte, Mr. Diaz, or any other witnesses according to Plaintiff's briefing, identify any documents that were missing or altered. *See generally Response*. As such, the Court cannot conclude that summary judgment would be improvidently granted in light of potential spoliation or inference of evidence unfavorable to MTC. *See* UJI 13-1650 NMRA 2011; UJI 13-1651 NMRA 2011.

### 2. The undisputed material facts demonstrate that *res ipsa loquitur* does not apply.

Plaintiff also argues that the doctrine of *res ipsa loquitur* precludes summary judgment on her claims that MTC negligently hired, retained, and/or supervised Corrections Officer Christopher Diaz. *See Response* at 19-20 (arguing that "a jury may conclude from the evidence and testimony that [Plaintiff] was sexually assaulted and raped while under the exclusive custody and control of MTC, which would not ordinarily occur in the absence of negligence"). "The doctrine of res ipsa loquitur applies only when evidence establishes that in the ordinary course of events an injury would not occur except through negligence of the person in exclusive control and management of the injuring instrumentality." *Hymans v. Safeco Ins. Co. of Am.*, 2007 WL 6593951 at *1 (N.M. Ct. App. 2009) (quoting *Trujeque v. Serv. Merch. Co.*, 117 N.M. 388, 391, 872 P.2d 361, 364 (1994)).

Initially, it seems incongruous to conclude that MTC may be held liable for the alleged intentional torts of its employee pursuant to *res ipsa loquitur* when the Court has already concluded as a matter of law that the employee's alleged actions were outside the scope of employment and that MTC lacked any prior knowledge or reason to know that the employee was somehow unfit for his position. *See* Parts A and B, *infra*. The Court is further unable to conclude that MTC's negligence was even arguably the *sine qua non* of Plaintiff's alleged sexual assault. Contrary to the theory of *res ipsa loquitur*, the Court finds that sexual assault unfortunately could occur even in the absence of any negligence by MTC. Indeed, the Court questions whether any employer should be presumed to have such control over his employee's actions that the doctrine of *res ipsa loquitur* would apply. MTC may not be held strictly liable for the actions of its employees in this manner—particularly not where, as here, the Court has

already found no basis for imposing vicarious or respondeat superior liability.

        **C.     The Undisputed Material Facts Do Not Support a Claim for Punitive Damages.**

A plaintiff may recover punitive damages under New Mexico law where the defendant acted maliciously, willfully, recklessly, wantonly, fraudulently, or in bad faith. UJI 13-1827 NMRA 2011. A plaintiff may recover punitive damages from an employer whose employee caused the plaintiff injury while acting maliciously, willfully, recklessly, wantonly, fraudulently, or in bad faith, provided the employee was acting within the scope of his employment or the employer somehow authorized, participated in, or ratified the conduct. *Id.* The New Mexico Court of Appeals recently affirmed an award of punitive damages against an employer in a sexual harassment case where the evidence showed that a manager was present during the employee's inappropriate behavior and did nothing to stop it, instead advising other employees that they needed to take care of themselves. *Littell v. Allstate Ins. Co.*, 2008-NMCA-012, ¶ 61, 143 N.M. 506, 177 P.3d 1080.

Summary judgment is appropriate on the punitive damages claim in this case, according to MTC, because Plaintiff has provided no evidence of misconduct by MTC, let alone the required evidence of a culpable state of mind. *Motion* at 13. Plaintiff does not respond to Defendant's summary judgment arguments regarding punitive damages. *See generally Response*. *See also Reply* at 11-12. Having independently reviewed the record as provided by the parties, the Court finds no evidence that MTC acted maliciously, willfully, recklessly, wantonly, fraudulently, in bad faith or with an otherwise culpable state of mind. As such, the Court will grant summary judgment in favor of MTC on the punitive damages claim.

**IV.    CONCLUSION**

Finding no basis for Plaintiff's claims of direct or vicarious liability against MTC and no evidence in support of Plaintiff's allegation that she is entitled to punitive damages, *Defendant Management & Training Corporation's Motion and Supporting Memorandum for Summary Judgment as to Plaintiff's Common Law and Punitive Damages Claims*, filed September 7, 2010 (Doc. 67) is GRANTED.  Counts I, II, and III are therefore dismissed with prejudice.

Because the Court previously granted summary judgment in Defendant MTC's favor on Count IV, no further claims are before the Court.

_____
SENIOR UNITED STATES DISTRICT JUDGE

Counsel for Plaintiff :

Connie Quintero, Esq.
James F. Scherr, Esq.
Jeffrey B. Pownell, Esq.
El Paso, TX

Counsel for Defendants:

Christina Muscarella Gooch, Esq.
Kurt Wihl, Esq.
Albuquerque, NM